UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK
_____

GILBERTO ALEXANDER LOPEZ
VAZQUES,

               Petitioner,

      v.

MR. MERRICK GARLAND, *United States
Attorney General, et al.*,

               Respondents.
_____

**DECISION AND ORDER**

1:21-CV-00477 EAW

## INTRODUCTION

Petitioner Gilberto Alexander Lopez Vazques ("Petitioner"), a civil immigration detainee currently held at the Buffalo Federal Detention Facility ("BFDF") in Batavia, New York, seeks a *writ of habeas corpus* pursuant to 28 U.S.C. § 2241. (Dkt. 1). Respondents have moved to dismiss the petition, arguing that it is premature. (Dkt. 4). For the reasons set forth below, the Court denies Respondents' motion to dismiss.

## BACKGROUND

Petitioner is a native and citizen of Colombia who was admitted to the United States on or about May 10, 2010, as a lawful permanent resident. (Dkt. 4-1 at ¶ 5). Petitioner was a minor at the time of his admission. (*Id.*).

Petitioner was subsequently convicted of multiple drug crimes. (*Id.* at ¶¶ 6-9). On February 19, 2020, the Department of Homeland Security ("DHS") issued an immigration detainer to the Wyoming Correctional Facility, where Petitioner was then incarcerated,

- 1 -

requiring notification if Petitioner was released from the custody of the New York State Department of Corrections and Community Supervision. (*Id*. at ¶ 10). Petitioner was placed into removal proceedings on March 3, 2020, via service of a Warrant for Arrest of Alien and Notice to Appear charging Petitioner with being removable pursuant to § 237(a)(2)(A)(iii) and(a)(2)(B)(i) of the Immigration and Nationality Act (the "INA"). (Dkt. 4-1 at ¶ 11).

An immigration judge ("IJ") ordered Petitioner removed to Colombia on September 24, 2020. (*Id*. at ¶ 15). Petitioner appealed the IJ's decision to the Board of Immigration Appeals (the "BIA"). (*Id*. at ¶ 17).

Petitioner was transferred into DHS's custody on September 30, 2020, and advised that he would be detained during the pendency of his removal proceedings. (*Id*. at ¶ 16).

The BIA affirmed Petitioner's removal order on March 25, 2021. (*Id*. at ¶ 19). Petitioner filed the instant action challenging his continued detention on April 8, 2021. (Dkt. 1). Petitioner then filed a petition for review ("PFR") and a motion for stay of removal with the Court of Appeals for the Second Circuit, which was docketed on April 15, 2021, two weeks prior to his scheduled removal date. (Dkt. 4-1 at ¶ 24).

Respondents filed the pending motion to dismiss on May 27, 2021. (Dkt. 4). Petitioner filed his response on June 15, 2021 (Dkt. 6), and Respondents filed a supplemental memorandum of law on July 8, 2021 (Dkt. 7).

## DISCUSSION

Respondents argue that the petition is premature because Petitioner is detained under 8 U.S.C. § 1231 and the presumptively reasonable six-month period for removal

under that statutory provision has not expired.  (*See* Dkt. 4-3 at 8).  Respondents' motion to dismiss thus turns on whether Petitioner is currently detained pursuant to 8 U.S.C. § 1226 or 8 U.S.C. § 1231.  A brief summary of the relevant legal landscape is necessary to understand the Court's resolution of this question.

"The distinction between § 1226 and § 1231 essentially comes down to whether an alien is subject to a final order of removal."  *Enoh v. Sessions*, 236 F. Supp. 3d 787, 793 (W.D.N.Y. 2017).  Section 1231 of the INA addresses detention of "immigrants in the 'removal period,' the term used in the statute to describe the 90-day period following an order of removal during which 'the Attorney General shall remove the alien.'"  *Hechavarria v. Sessions*, 891 F.3d 49, 54 (2d Cir. 2018) (quoting 8 U.S.C. § 1231(a)(1)(A)).  The removal period begins "on the latest of the following": (1) "[t]he date the order of removal becomes administratively final"; (2) "[i]f the removal order is judicially reviewed and if a court orders a stay of the removal of the alien, the date of the court's final order"; and (3) "[i]f the alien is detained or confined (except under an immigration process), the date the alien is released from detention or confinement."  8 U.S.C. § 1231(a)(1)(B).

In 2012, DHS and the Second Circuit entered into a forbearance agreement wherein the government "has assured that removal will not occur" while the detainee has a PFR pending before that court.  *In re Immigration Petitions for Review Pending in U.S. Court of Appeals for Second Circuit*, 702 F.3d 160, 162 (2d Cir. 2012).

Numerous judges in this Circuit, including the undersigned, have found that the forbearance agreement amounts to a court-ordered stay of removal and that detainees with

a pending PFR and motion to stay are thus not detained pursuant to § 1231. *See, e.g., Ranchinskiy v. Barr*, 422 F. Supp. 3d 789, 795-96 (W.D.N.Y. 2019) (the undersigned reaching such a holding); *Sankara v. Whitaker*, No. 18-CV-1066, 2019 WL 266462, at *4 (W.D.N.Y. Jan. 18, 2019) (collecting cases); *Yusuf v. Edwards*, No. 18-CV-3605 (GBD) (BCM), 2019 WL 4198798, at *5 & n.4 (S.D.N.Y. July 2, 2019) ("[B]ecause of the government's forbearance policy, an alien who files a PFR and a stay motion in the Second Circuit obtains 'the functional equivalent of a stay order,' such that § 1231 no longer governs his detention and he 'may not be denied a bond hearing on that basis.'" (collecting S.D.N.Y. cases)).

However, some judges in this Circuit have found to the contrary, concluding that "the forbearance is not a stay." *Brathwaite v. Barr*, 475 F. Supp. 3d 179, 186 (W.D.N.Y. 2020); *see also Narain v. Searls*, No. 19-CV-6361 (CJS), 2020 WL 95425, at *3-4 (W.D.N.Y. Jan. 8, 2020).

Respondents urge the Court to revisit its prior holding regarding whether the forbearance agreement is the equivalent of a court-ordered stay for purposes of § 1231, arguing that in its recent decision in *Johnson v. Guzman Chavez*, 141 S. Ct. 2271 (2021), the Supreme Court "rejected the same arguments used to support holding that a noncitizen subject to a forbearance stay is detained pursuant to § 1226." (Dkt. 7 at 4).

The Court disagrees with Respondents' analysis of *Guzman Chavez*. The issue in that case was whether § 1226 or § 1231 "governs the detention of aliens subject to reinstated orders of removal" who had "sought withholding of removal based on fear of persecution in the particular countries designated by their removal orders." 141 S. Ct. at

2280.  The Supreme Court concluded that detention in such cases falls under § 1231, because such reinstated orders of removal are administratively final, and because "a grant of withholding-only relief means only that, notwithstanding the order of removal, the noncitizen may not be removed to the designated country of removal, at least until conditions change in that country, and . . . the noncitizen still may be removed at any time to another country." *Id*. at 2286 (quotations omitted).  In other words, there is no question as to *whether* the alien in such a situation can be removed—the question is to *where* he can be sent.  *Id*. at 2287 (explaining the "distinction between whether an alien is to be removed and where an alien is to be sent").   Accordingly, the "decision about whether [the petitioners in *Guzman Chavez*] were to be removed" was no longer "pending," and so their detention was governed by § 1231.  *Id*. (citation omitted).  Unlike the petitioners in *Guzman Chavez*, here the question of *whether* Petitioner can be removed remains pending—indeed, that is the precise question the Second Circuit must decide.  Accordingly, the Court does not view *Guzman Chavez* as inconsistent with its prior conclusions regarding the impact of the forbearance agreement.

It is true that the Supreme Court stated in *dicta* in *Guzman Chavez* that the text of § 1231 does not suggest that "*all* legal impediments must be eliminated before the removal period begins." *Id*. at 2291 (emphasis in original).  However, this Court's prior holdings regarding the forbearance agreement do not rest on the proposition that *all* legal impediments to removal must be eliminated—instead, they rest on the much narrower conclusion that the forbearance agreement is the legal equivalent of a court-ordered stay, which is one of the three legal impediments to removal specifically listed in § 1231 as

delaying the removal period. *See Vides v. Wolf*, No. 6:20-CV-06293 EAW, 2020 WL 3969368, at *6 (W.D.N.Y. July 14, 2020) (holding that "the forbearance agreement effectively constitutes a consent order staying removal").

In sum, the Court finds no basis in *Guzman Chavez* to disturb its prior conclusions regarding the legal impact of the forbearance agreement. The Court continues to find that individuals, like Petitioner, who have a pending PFR and who cannot be removed pursuant to the forbearance agreement, are detained under § 1226. As a result, Respondents' motion to dismiss, which is premised entirely on their contention that Petitioner is detained under § 1231, must be denied, and Respondents must respond to the petition on the merits.

## CONCLUSION

For the foregoing reasons, Respondents' motion to dismiss (Dkt. 4) is denied. Respondents shall file and serve an answer and memorandum in opposition to the petition within 30 days of entry of this Decision and Order. Petitioner shall have 20 days upon receipt of the answer to file a written response.

SO ORDERED.

_____
ELIZABETH A. WOLFORD
Chief Judge
United States District Court

Dated:   August 24, 2021
         Rochester, New