UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK
_____

GILBERTO ALEXANDER LOPEZ
VAZQUES,

                Petitioner,

      v.

MR. MERRICK GARLAND, *United States Attorney General, et al.*,

                Respondents.
_____

**DECISION AND ORDER**

1:21-CV-00477 EAW

# INTRODUCTION

Petitioner Gilberto Alexander Lopez Vazques ("Petitioner"), a civil immigration detainee currently held at the Buffalo Federal Detention Facility ("BFDF") in Batavia, New York, seeks a *writ of habeas corpus* pursuant to 28 U.S.C. § 2241. (Dkt. 1). Respondents previously moved to dismiss the petition as premature. (Dkt. 4). The Court denied Respondents' motion to dismiss (Dkt. 8), and Respondents thereafter opposed the petition. (Dkt. 9).

# BACKGROUND

Petitioner is a native and citizen of Colombia who was admitted to the United States on or about May 10, 2010, as a lawful permanent resident. (Dkt. 4-1 at ¶ 5). Petitioner was a minor at the time of his admission. (*Id*.).

Petitioner was subsequently convicted of multiple drug crimes. (*Id*. at ¶¶ 6-9). On February 19, 2020, the Department of Homeland Security ("DHS") issued an immigration

detainer to the Wyoming Correctional Facility, where Petitioner was then incarcerated, requiring notification if Petitioner was released from the custody of the New York State Department of Corrections and Community Supervision. (*Id*. at ¶ 10). Petitioner was placed into removal proceedings on March 3, 2020, via service of a Warrant for Arrest of Alien and Notice to Appear charging Petitioner with being removable pursuant to § 237(a)(2)(A)(iii) and (a)(2)(B)(i) of the Immigration and Nationality Act (the "INA"). (Dkt. 4-1 at ¶ 11).

An immigration judge ("IJ") ordered Petitioner removed to Colombia on September 24, 2020. (*Id*. at ¶ 15). Petitioner appealed the IJ's decision to the Board of Immigration Appeals (the "BIA"). (*Id*. at ¶ 17).

Petitioner was transferred into DHS's custody on September 30, 2020, and advised that he would be detained during the pendency of his removal proceedings. (*Id*. at ¶ 16).

The BIA affirmed Petitioner's removal order on March 25, 2021. (*Id*. at ¶ 19). Petitioner filed the instant action challenging his continued detention on April 8, 2021. (Dkt. 1). Petitioner then filed a petition for review ("PFR") and a motion for stay of removal with the Court of Appeals for the Second Circuit, which was docketed on April 15, 2021, two weeks prior to his scheduled removal date. (Dkt. 4-1 at ¶ 24). The matter remains pending before the Second Circuit.

On June 17, 2021, DHS issued a decision to continue Petitioner's detention after conducting a ninety-day custody review. (Dkt. 9-1 at ¶ 19).

**DISCUSSION**

**I.      Jurisdiction and Legal Standard**

The federal habeas corpus statute gives district courts jurisdiction to hear immigration-related detention cases.  *See* 28 U.S.C. § 2241(c)(3); *Demore v. Kim*, 538 U.S. 510, 517-18 (2003) (holding federal courts have jurisdiction to review challenges to pre-removal detention); *Zadvydas v. Davis*, 533 U.S. 678, 688 (2001) (holding "§ 2241 habeas corpus proceedings remain available as a forum for statutory and constitutional challenges to post-removal-period detention" in immigration cases).  District courts do not have jurisdiction over challenges to the legality of final orders of deportation, exclusion, and removal; jurisdiction to review such challenges rests exclusively in circuit courts.  *See Gittens v. Menifee*, 428 F.3d 382, 384 (2d Cir. 2005) ("[The REAL ID Act, 119 Stat. 231, § 106(a) (May 11, 2005)] eliminates habeas jurisdiction over final orders of deportation, exclusion, and removal, providing instead for petitions of review . . . which circuit courts alone can consider.").

"When a petitioner brings a habeas petition pursuant to § 2241, the petitioner 'bears the burden of proving that he is being held contrary to law; and because the habeas proceeding is civil in nature, the petitioner must satisfy his burden of proof by a preponderance of the evidence.'"  *Dzhabrailov v. Decker*, No. 20-CV-3118 (PMH), 2020 WL 2731966, at *3 (S.D.N.Y. May 26, 2020) (quoting *Skaftouros v. United States*, 667 F.3d 144, 158 (2d Cir. 2011)); *see Cruz v. Decker*, No. 18-CV-9948 (GBD) (OTW), 2019 WL 7572975, at *3 (S.D.N.Y. Aug. 27, 2019) ("To obtain [ ] relief [under § 2241], the petitioner must show violation of his rights by a preponderance of the evidence." (citing

*Jones v. Vacco*, 126 F.3d 408, 415 (2d Cir. 1997))), *report and recommendation adopted*, 2019 WL 6318627 (S.D.N.Y. Nov. 26, 2019).

## II.     Procedural Due Process Claim

The Court has determined that Petitioner is detained pursuant to 8 U.S.C. §1226(c). (Dkt. 8 at 6).  Petitioner argues that his continued detention is a violation of: (1) the INA; (2) his right to substantive due process; (3) his right to procedural due process.  (Dkt. 1). The Court considers first Petitioner's procedural due process claim.  As set forth below, the Court agrees that Petitioner has not been afforded procedural due process but rejects Petitioner's argument he is entitled to immediate release.  Instead, the Court orders the government to provide Petitioner with a bond hearing at which: (1) the government must demonstrate dangerousness or flight risk by clear and convincing evidence; and (2) the IJ must consider non-bond alternatives to detention or, if setting a bond, ability to pay.

As the Second Circuit has held, unreasonably prolonged immigration detention without appropriate procedural protections may constitute a due process violation. *Velasco Lopez v. Decker*, 978 F.3d 842, 846 (2d Cir. 2020).  For the reasons previously articulated, *see, e.g.*, *Constant v. Barr*, 409 F. Supp. 3d 159, 167-68 (W.D.N.Y. 2019), this Court agrees with the overwhelming majority of courts in this Circuit that the multi-factor approach articulated by the court in *Sajous v. Decker*, No. 18-CV-2447 (AJN), 2018 WL 2357266, at *1 (S.D.N.Y. May 23, 2018), and other courts within this Circuit, is a useful tool for addressing procedural due process claims for aliens—like Petitioner—who are detained pursuant to § 1226(c).  Those non-exclusive factors are as follows:

> (1) the length of time the petitioner has been detained; (2) the party responsible for the delay; (3) whether the petitioner has asserted defenses to removal; (4) whether the detention will exceed the time the petitioner spent in prison for the crime that made him removable; (5) whether the detention facility is meaningfully different from a penal institution for criminal detention; (6) the nature of the crimes committed by the petitioner; and (7) whether the petitioner's detention is near conclusion.

*Cabral v. Decker*, 331 F. Supp. 3d 255, 261.

As to the first factor, Petitioner has been in immigration detention since September 30, 2020, or for more than 21 months. Thus, "[t]he first and 'most important' . . . factor weighs heavily in favor of granting the petition." *Bermudez Paiz v. Decker*, No. 18-CV-4759 (GHW) (BCM), 2018 WL 6928794, at *13 (S.D.N.Y. Dec. 27, 2018) (citation omitted). "[C]ourts in this Circuit have generally been skeptical of prolonged detention of removable immigrants, without process, lasting over six months," *Lett v. Decker*, 346 F. Supp. 3d 379, 387 (S.D.N.Y. 2018) (quoting *Lopez v. Sessions*, No. 18 Civ. 4189 (RWS), 2018 WL 2932726, at *14 (S.D.N.Y. June 12, 2018)), and "courts have found detention shorter than a year to be unreasonably prolonged as part of procedural due process analysis," *Rosado Valerio v. Barr*, No. 19-CV-519, 2019 WL 3017412, at *4 (W.D.N.Y. July 10, 2019) (collecting cases).

Respondents contend that the second factor in the analysis—which party is responsible for the delay—undercuts a finding of an unreasonable length of detention in Petitioner's case because "[t]he government has caused no significant delays in the proceedings, and Petitioner himself has caused some delay." (Dkt. 9-4 at 17). For procedural due process claims, when "considering whether [Petitioner] or the Government is responsible for the prolonged proceedings, the Court may examine the record to

determine whether the alien sought repeated or unnecessary continuances, or filed frivolous claims and appeals." *Vallejo v. Decker*, No. 18-CV-5649, 2018 WL 3738947, at *4 (S.D.N.Y. Aug. 7, 2018) (quotation omitted)); *see Sajous*, 2018 WL 2357266, at *11 ("[A]liens who are merely gaming the system to delay their removal should not be rewarded with a bond hearing that they would not otherwise get under the statute." (quoting *Chavez-Alvarez v. Warden York Cty. Prison*, 783 F.3d 469, 476 (3d Cir. 2015))). "[C]ourts should keep in mind that 'aliens should not be punished for pursuing avenues of relief and appeals[,]' but evidence of bad faith delays may cut against them." *Hernandez v. Decker*, No. 18-CV-5026 (ALC), 2018 WL 3579108, at *7 (S.D.N.Y. July 25, 2018) (quotation omitted).

Here, the record does not show Petitioner engaged in any bad faith delay tactics. The only argument Respondents make in this regard is that Petitioner made a "decision to continue litigating even after being denied relief by the IJ and BIA." (Dkt. 9-4 at 18). However, the Court does not find it appropriate to penalize Petitioner for pursuing an appeal to which he was entitled. *See Hechavarria*, 891 F.3d at 56 n.6 (noting the Supreme Court has given weight to a petitioner's decision to pursue review of a removal order in the "context only of an immigrant who has 'substantially prolonged his stay by abusing the processes provided to him,' *Nken v. Holder*, 556 U.S. 418, 436 (2009)—not of an immigrant who simply made use of the statutorily permitted appeals process"). This factor accordingly favors Petitioner.

As for the third factor, Respondents argue that "Petitioner does not even argue that he has meritorious defenses to removal" and that "he advanced arguments for cancellation

of removal that fly in the face of a vast majority of legal precedent." (Dkt. 9-4 at 18). It is true that Petitioner has failed to articulate why he believes his defenses to removal are meritorious. However, the record reveals that the argument Petitioner advanced before the IJ and the BIA in opposition to removal was that his 2018 criminal conviction for criminal sale of a controlled substance in the third degree in violation of New York Penal Law ("NYPL") § 220.39(1) was not a controlled substance offense under § 237(a)(2)(B) of the INA, nor an aggravated felony under §§ 101(a)(43)(B) and 237(a)(2)(A)(iii) of the INA. (Dkt. 9-2 at 66). The BIA rejected this argument (*see id*. at 67) because the Second Circuit has previously held that a conviction under NYPL § 220.39 constitutes an aggravated felony under § 101(a)(43)(B) of the INA. *See Pascual v. Holder*, 707 F.3d 403, 405 (2d Cir. 2013), *adhered to on reh'g*, 723 F.3d 156 (2d Cir. 2013); *see also Austin v. Sessions*, 700 F. App'x 34, 36 (2d Cir. 2017) ("We held in *Pascual I* that a conviction under NYPL § 220.39 is categorically an aggravated felony drug trafficking crime.").

However, Petitioner specifically raised an argument that NYPL § 220.39(1) "regulates all possible isomers of cocaine, opiates, and opium derivates, naldemedine, naloxegol, and both optical and geometric isomers of 3-methylfentanyl," while the federal Controlled Substances Act ("CSA") "regulates only optical and geometric isomers of cocaine, the optical isomers of opium and opium derivatives, and the optical isomers of 3-methylfentanyl, and excepts naldemedine and naloxegol." (Dkt. 9-2 at 66). This "narcotic drug—controlled substance mismatch issue was not presented to the *Pascual* panel." *United States v. Holmes*, No. 21-CR-147 (NGG), 2022 WL 1036631, at *6 n.5 (E.D.N.Y. Apr. 6, 2022). At least two courts in this Circuit have recently held that there is a

categorical mismatch between the definition of narcotic drug used in NYPL § 220.39(1) and the definition of a controlled substance in the CSA, and accordingly convictions under NYPL § 220.39(1) "are not aggravated felonies within the meaning of the INA." *Id*. at *11; *see also United States v. Gutierrez-Campos*, No. 21 CR. 40 (JPC), 2022 WL 281582, at *16 (S.D.N.Y. Jan. 31, 2022). The Court thus cannot say that Petitioner's arguments are without merit, and this factor weighs in favor of Petitioner.

The fourth factor is at best neutral. Petitioner was in criminal custody from February of 2019 to September of 2020, or for approximately 19 months. He has been detained by DHS since September of 2020, or for approximately 21 months. These are roughly equivalent time periods, with Petitioner's immigration detention now exceeding the time he was incarcerated.

The fifth factor—whether the detention facility is meaningfully different from a penal institution for criminal detention—is also at best neutral. As this Court has noted in past cases, while the BFDF provides detainees with amenities not normally available in a prison setting, it is ultimately a detention facility that severely curtails the liberties of the individuals detained therein. *See, e.g., Mycoo v. Warden of Batavia Fed. Det. Facility*, No. 6:20-CV-06405 EAW, 2020 WL 5800920, at *7 (W.D.N.Y. Sept. 29, 2020).

The sixth factor, the nature of the crime(s) Petitioner was convicted of, weighs in favor of Respondents. Petitioner has been convicted of selling cocaine, which is a serious crime that poses a danger to society.

The final factor, whether Petitioner's detention is near conclusion, weighs in Petitioner's favor. Petitioner's PFR is still pending, and it is unclear when the Second Circuit will issue its decision. *See Ranchinskiy*, 422 F. Supp. 3d at 799.

On balance, and considering all the circumstances, the Court finds that Petitioner's continued detention without a procedurally proper bond hearing is constitutionally unjustified. *See Arce-Ipanaque v. Decker*, No. 19-CV-1076 (JMF), 2019 WL 2136727, at *2 (S.D.N.Y. May 15, 2019) ("At bottom, the minimal burden that a bond hearing would place on the Government is far outweighed by [the petitioner]'s interest in ensuring that his continued detention is justified." (quotation and original alteration omitted)).

The Court further finds, for reasons it has articulated at length in previous cases, that due process requires that Petitioner receive a bond hearing where the government must demonstrate dangerousness or flight risk by clear and convincing evidence, where the IJ considers whether less-restrictive alternatives to detention could mitigate that risk, and where the IJ considers ability to pay and alternative conditions of release in setting bond. *See Velasco Lopez*, 978 F.3d at 856-57; *Mycoo*, 2020 WL 5800920, at *7-8; *Abdi v. Nielsen*, 287 F. Supp. 3d 327, 335-39 (W.D.N.Y. 2018); *see also Hernandez v. Sessions*, 872 F.3d 976, 991 & n.4 (9th Cir. 2017) ("A bond determination that does not include consideration of financial circumstances and alternative release conditions is unlikely to result in a bond amount that is reasonably related to the government's legitimate interests."); *Arce-Ipanaque*, 2019 WL 2136727, at *3 (collecting cases).

However, the Court rejects Petitioner's contention that this Court should simply order his release. "[D]istrict courts rightly favor conditional grants [of habeas corpus

relief], which give the executive branch the opportunity to cure its constitutional errors and which appropriately recognize comity among the co-equal branches." *Hechavarria*, 358 F. Supp. 3d at 234-35 (quotations and original alterations omitted). The IJ is the appropriate individual to assess in the first instance, consistent with the procedures set forth above, whether release is warranted and what conditions are appropriate.

### III.     Substantive Due Process and Statutory Violation Claims

Petitioner also claims a violation of his Fifth Amendment right to substantive due process. (Dkt. 1 at 4). "In order to establish a violation of a right to substantive due process, a plaintiff must demonstrate not only government action but also that the government action was so 'egregious, so outrageous, that it may fairly be said to shock the contemporary conscience.'" *Pena v. DePrisco*, 432 F.3d 98, 112 (2d Cir. 2005) (quoting *County of Sacramento v. Lewis*, 523 U.S. 833, 847 n.8 (1998)). As this Court has explained in prior cases, an immigration detainee asserting a substantive due process violation must establish that his removal is not "reasonably foreseeable," and that standard is not satisfied where a petitioner "would be removed if he withdrew his petition for review." *Ranchinskiy*, 422 F. Supp. 3d at 789; *see also Doherty v. Thornburgh*, 943 F.2d 204, 211 (2d Cir. 1991) (a petitioner "may not rely on the extra time resulting" from his appeal "to claim that his prolonged detention violates substantive due process"); *Rodriguez v. Garland*, No. 21-CV-373-LJV, 2021 WL 5495397, at *4 (W.D.N.Y. Nov. 23, 2021) ("Although there comes a time when the length of a noncitizen's detention pending removal violates due process regardless of the procedural protections afforded, . . . that

time has not yet come here."). Petitioner has not demonstrated a substantive due process violation in this case.

As to Petitioner's assertion that his ongoing detention violates the INA (*see* Dkt. 1 at 3-4), "the INA does not itself create a cause of action or federally-protected right." *Lopez Canas v. Whitaker*, No. 6:19-CV-06031-MAT, 2019 WL 2287789, at *4 (W.D.N.Y. May 29, 2019) (quotation omitted). Accordingly, Petitioner's claim for a statutory violation fails.

## IV. Named Respondents

The government contends that Jeffrey Searls, Facility Acting Director of the BFDF, is the only respondent with immediate custody over Petitioner, and consequently the only proper respondent. (Dkt. 9-4 at 23-24). The Court agrees with the government and dismisses all respondents except for Jeffrey Searls from the instant action. *See Rodriguez v. Barr*, No. 6:18-cv-06757-MAT, 2019 WL 2192516, at *3 n.3 (W.D.N.Y. May 21, 2019) ("Searls is the only proper respondent in this § 2241 proceeding as he is the person with direct control over Petitioner's detention." (citing *Rumsfeld v. Padilla*, 542 U.S. 426, 435 (2004) ("[I]n habeas challenges to present physical confinement . . . the default rule is that the proper respondent is the warden of the facility where the prisoner is being held[.]"))), *reconsideration denied*, 2019 WL 6037275 (W.D.N.Y. Nov. 14, 2019); *Hassoun v. Sessions*, No. 18-CV-586-FPG, 2019 WL 78984, at *7 (W.D.N.Y. Jan. 2, 2019) ("The majority view in the Second Circuit requires the 'immediate custodian,' generally the prison warden, to be named as a respondent in 'core' immigration habeas proceedings— *i.e.*, those challenging present physical confinement." (quotation omitted)); *see also S.N.C.*

*v. Sessions*, 325 F. Supp. 3d 401, 407 (S.D.N.Y. 2018) ("If, on the other hand, the petition challenges a broader form of legal, non-physical custody, then the proper respondent is the person with legal authority to effect that custody.").

## **CONCLUSION**

For the foregoing reasons, the Court: (1) grants the petition (Dkt. 1) in part to the extent that the Court orders the government to afford Petitioner an individualized bond hearing consistent with the procedures outlined in this Decision and Order within 21 days of its entry;  (2) denies the petition without prejudice in all other respects, including Petitioner's request for immediate release; and (3) dismisses all respondents except Jeffrey Searls, Facility Acting Director of the BFDF, from the matter.

If Petitioner requests a continuance that results in a bond hearing date outside the 21-day deadline set forth above, such a continuance will be in compliance with the instant Decision and Order, as long as the new date falls within a reasonable time period. Respondent is directed to file a status update with the Court within three (3) days of the date of a decision concerning Petitioner's bond hearing regarding the outcome of the hearing.  The Clerk of Court is directed to enter judgment and close this case.

SO ORDERED.

ELIZABETH A. WOLFORD
Chief Judge
United States District Court

Dated: July 6, 2022
       Rochester, New